THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>NATHAN BONDS,<br><br>      Defendant. | CASE NO. CR14-0074-JCC<br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIALS AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE |

   These matters come before the Court on Defendant's Motion to Compel Production of *Brady* Materials (Dkt. No. 48) and Defendant's Motion to Suppress Evidence (Dkt. No. 49). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Defendant's Motion to Compel (Dkt. No. 48) with regard to all requests save Defendant's second *Brady* materials request, GRANTS IN PART Defendant's second *Brady* materials request in the Motion to Compel (Dkt. No. 48), subject to the specifications in this Order, DENIES Defendant's Motion to Suppress (Dkt. No. 49), and DENIES Defendant's request for an evidentiary hearing.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 1

# I.     BACKGROUND

Defendant, forty-three-year-old Nathan Bonds ("Slim"), has been charged with the sex trafficking of two sixteen year old girls ("JV1" and "JV2")[1] and with transporting JV1 and JV2 and an adult woman ("FV1") across state lines for the purposes of prostitution.[2]  During the spring of 2013, JV1 and JV2 provided statements to law enforcement that "Slim," a man subsequently identified as Defendant, had convinced them to engage in commercial sex and to provide him with the proceeds.  (Affidavit for a Search Warrant, Dkt. No. 53, Ex. 9 at 3.)

After completing the interviews with JV1 and JV2, law enforcement found evidence corroborating the statements of the two minors, including, but not limited to, hotel records, "Backpage.com" advertisements featuring JV1, JV2, and FV1 that indicated a telephone number now identified to a phone found in Defendant's car upon his arrest, and surveillance videos showing Defendant with JV1 and JV2 in Washington and Oregon.  (Affidavit for a Search Warrant, Dkt. No. 53, Ex. 9.)

Based on this evidence, the Kent Police Department decided to issue a law enforcement awareness bulletin describing Defendant, FV1, and the Cadillac Defendant was known to drive, and instructing law enforcement personnel to contact Detective Brian Lewis of the Kent Police Department upon contact with Defendant or the Cadillac.  (Bulletin, Dkt. No. 53, Ex. 10.)  On

---

[1] The two teenage girls allegedly trafficked by Defendant are referred to as "JV" in parts of the record and as "JF" in others.  The Court employs "JV" in this Order as it is the form most frequently used by the Defense.

[2] Bonds is charged in a five-count Second Superseding Indictment with one count of Sex Trafficking of a Minor (JV1) by Force, Fraud and Coercion, in violation of Title 18, United States Code, Section 1591; one count of Sex Trafficking of a Minor (JV2), in violation of Title 18, United States Code, Section 1591; two counts of Transportation of a Minor (JV1 and JV2) with Intent to Engage in Criminal Sexual Activity, in violation of Title 18, United States Code, Section 2423(a); and one count of Transportation for Prostitution through Coercion and Enticement (FV1), in violation of Title 18, United States Code, Section 2422.

June 5th, 2013, Deputy Ryan Phillips of the Snohomish County Sheriff's Office saw a Cadillac in a restaurant parking lot on Everett Avenue, in Everett, Washington, that matched the description in the Bulletin.  After spotting a man, (Defendant), in the driver's seat, and a woman, (FV1), in the passenger seat, who also matched the description on the Bulletin, Deputy Phillips approached the car from the passenger side, where the window was rolled down.  (Declaration of Ryan Phillips, Dkt. 53, Ex. 7 at paras. 3, 4.)  After a brief conversation to see what Defendant and FV1 were doing (eating food from the restaurant), Deputy Phillips asked to see the occupants' identification.  The Defendant began to proclaim that he did not need to provide the Deputy with identification.  (*Id.* at 4.)  The Defendant then said that the Deputy could see his identification, but that he would have to come over to the driver's side to get it.  The Defendant then put his left hand down his side.  This raised Deputy Phillips' "safety concerns," and he felt compelled to draw his gun and to call for backup.  (*Id.* at 4, 5.)  When a backup officer arrived and took over the detention of Defendant, Deputy Phillips spoke with FV1.  She identified the man in the car as "Slim."  (*Id.* at 6.)

Deputy Phillips then called Detective Brian Lewis of the Kent Police Department, following the instructions on the Bulletin.  (*Id.* at 7.)  Detective Lewis told Deputy Phillips that he had probable cause to arrest the male driver, "Slim," based on evidence that he had been involved in sex trafficking two minors.  Detective Lewis told Deputy Phillips to have the Cadillac impounded, as it had been used in the alleged offenses.  (*Id.*)  Detective Lewis asked Deputy Phillips whether he had seen anything in the car while speaking to Defendant and FV1.  (*Id.* at 8.)  Deputy Phillips responded that he had seen three phones in the car, one of which was next to Defendant in the driver's door pocket.  (*Id.*)

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 3

Deputy Phillips avers that he did not go into Defendant's car or search it at any time. (*Id.*) After his call with Detective Lewis, Deputy Phillips placed Defendant in his patrol car. (*Id.* at 9.) After the tow truck that Dispatch had sent arrived, the tow truck operator attached Defendant's Cadillac to the tow truck. (*Id.* at 9, 10.) Deputy Phillips then drove Defendant, in his patrol car and following behind the truck towing Defendant's car, to the Snohomish County South Precinct. (*Id.* at 11.) Upon arrival of the patrol car carrying Deputy Phillips and Defendant and the tow truck carrying Defendant's car, the tow truck driver put the Cadillac in the station's parking bay, and Deputy Phillips placed evidence tape over the doors and initialed the tape. (*Id.*) Deputy Phillips states that at no time did he enter or search the Cadillac, nor knows of anyone else doing so until a search pursuant to a warrant was conducted the following day. (*Id.*)

Later that evening, Detective Lewis went up to the Snohomish County South Precinct where Defendant and the Cadillac were in custody. (Declaration of Brian Lewis, Dkt. No. 53, Ex. 8 at para. 3.) Detective Brian Lewis conducted a post-*Miranda* interview with Defendant, during which Defendant made no mention that a search of his vehicle had occurred at any time. (*Id.*) Detective Lewis states that he did not search the Cadillac during this visit, nor at any other time prior to the issuance of the search warrant the next day. (*Id.* at 5.) After his interview with Defendant, Detective Lewis drafted an eighteen-page affidavit for a search warrant consisting mostly of the evidence law enforcement had amassed on Defendant prior to his arrest, in addition to Deputy Phillips' account of the arrest and his observation of three phones (Affidavit for a Search Warrant, Dkt. No. 53, Ex. 9 at 3). (Declaration of Brian Lewis, Dkt. No. 53, Ex. 8 at para. 4.)

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 4

A King County Superior Court Judge issued a search warrant the next day, on June 6th, 2013.  Pursuant to the warrant, Detective Lewis and another detective traveled up from Kent to the Snohomish South Precinct, went to the Cadillac (still sealed, they state, with the evidence tape that Deputy Phillips had placed and initialed on the vehicle's arrival the day before), took pictures, and searched the Cadillac.  (*Id.* at para. 5.)  Detective Lewis states that he saw three phones in plain sight, including the phone in the driver's door pocket.  (*Id.* at para. 6.)

Defendant has been in custody since his June 5th, 2013 arrest.  (Motion to Suppress, Dkt. No. 49 at 2.)  He was originally charged in King County Superior Court on state law charges analogous to those he is currently facing in this Court.  (*Id.*)  The U.S. Attorney's Office filed a complaint on February 27, 2014, and the state charges were dismissed on March 5, 2014.  (*Id.*)  Defendant pleads Not Guilty.

## II.   DEFENDANT'S MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIALS

### A.   The *Brady* Standard

A criminal defendant's due process rights obligate the prosecution to disclose information that is favorable to the defendant and that is "material either to guilt or to punishment."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  For the Government's *Brady* obligations to attach, the information at question must be in the knowing possession (actual or constructive) of the Government, and such information must be material to exculpating the defendant.

**Possession**.  The Government is only required to disclose information to the defense "[i]f [the] federal prosecutor has knowledge of and access to exculpatory information as defined in

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 5

*Brady.*"  *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989).  *See also United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999) ("The prosecution must only reveal information that it had in its possession or knowledge – whether actual or constructive.").  The Ninth Circuit has held that the "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."  *Bryan*, 868 F.2d at 1036.  As the Government correctly points out in its Response to Defendant's Motion to Compel, *Brady* does not impose on federal prosecutors the obligation to *obtain* and disclose information that is not already in the actual or constructive possession of the Government, but rather in the hands of non-federal-agency third parties.[3]

**Materiality**.  Defense correctly states that favorable evidence for *Brady* purposes includes both exculpatory and impeachment evidence.  *See Giglio v. United States,* 405 U.S. 150, 154 (1972); *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988).  But mere "favorableness" to the defendant is not enough to qualify for *Brady* protections – the information must also be material.  As the Defense correctly states, evidence "is material as long as there is a *strong indication* that it will play an *important role* in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (emphasis added).  Thus, favorableness must be evaluated in the light of utility to the defendant in preparation for or at trial.[4]

---

[3] *See United States v. Flores*, 540 F.2d 432, 437 (9th Cir. 1976) (noting that the Government is under no obligation to sift through public records to which the defense has equal access); *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001) (explaining that *Brady* does not compel the government to obtain evidence from third parties that are not also federal government agencies); *United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1993) ("Certainly, *Brady* does not require the government to conduct discovery on behalf of the defendant.").

[4] *C.f. Giglio*, 405 U.S. at 154 (explaining, in relation to retrials for *Brady* violations, that courts will not "automatically require a new trial whenever a combing of the prosecutors files after the trial has disclosed evidence

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 6

It is important to note that courts have generally accepted both federal prosecutors' good faith averments that the information they have is not exculpatory, and that certain exculpatory evidence is not in their possession.[5] This does not contradict the Defense's contentions that if evidence is arguably exculpatory, it is improper for a prosecutor to unilaterally withhold it on the grounds that it is not truly useful. (*See* Defendant's Motion to Compel, Dkt. No. 48 at 7.) But as the U.S. Supreme Court explained in a case similarly involving *Brady* disclosures and the confidential information of the alleged minor victims:

> [T]he Pennsylvania Supreme Court . . . apparently concluded that whenever a defendant alleges that protected evidence might be material, the appropriate method of assessing this claim is to grant full access to the disputed information, regardless of the State's interest in confidentiality. We cannot agree. A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. *Although the eye of an advocate may be helpful to a defendant in ferreting out information, this Court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary.* In the typical case where a defendant makes only a general request for exculpatory material under *Brady*, it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other [specific, actually in existence, and possessed by the government] exculpatory evidence was withheld and brings it to the court's attention, *the prosecutor's decision on disclosure is final*. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.

---

possibly useful to the defense but not likely to have changed the verdict. A finding of materiality of the evidence is required under *Brady*. A new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.") (internal citations omitted).

[5] *See United States v. Deerfield Specialty Papers, Inc.*, 501 F. Supp. 796, 819 (E.D. Pa. 1980) ("The Court thus finds that inasmuch as all the information required to be disclosed under F.R.Crim.P. 16(a)(1) has already been delivered to the defendants by the government and inasmuch as the government has in good faith stated that it has disclosed all *Brady* information, the defendants' joint motion is unpersuasive. The court in *Archer v. United States*, 393 F.2d 124, 126 (5th Cir. 1968), held that *the government need only declare that it is without the information requested to satisfy a court of good faith disclosure under* Brady.") (emphasis added).

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 7

*Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987) (internal citations omitted) (emphasis added).[6]

Bearing in mind the body of precedent by which this Court is bound, we now turn to Defendant's various *Brady* requests.

### B.     Defendant's Specific Requests for *Brady* Materials

1.  *"Copies of any and all plea agreements or agreements of immunity or agreements of any kind of prosecutorial forbearance, assistance, waiver of charges, sentence recommendations, or incentives made with any and all persons involved with this investigation, whether made by federal, state, or local authorities, including, but not limited to, alleged victims and witnesses."*

Defense claims that

> [T]he fact that these women have allegedly confessed to committing the criminal act of prostitution leads Defense to the unescapable conclusion that someone in law enforcement has both explained to them the possible legal consequences of their activities to themselves, and given them assurances they will not be prosecuted if they make statements implicating other people, specifically Mr. Bonds. These women obviously have the potential for many motives to deflect blame from themselves and to minimize their responsibility for their own criminal actions.

(Defense Motion to Compel, Dkt. No. 48 at 9.)

If such agreements existed, they would likely be favorable and material to the Defense, as they would provide an important means of impeaching witnesses with evidence of bias. However, the possession requirement for a *Brady* obligation has not been met. This is because the Government certifies in their Response to the Court, that "no such agreements exist . . . there is no such evidence to disclose." (Government's Response to Defendant's Motion to Compel,

---

[6]  The *Ritchie* Court's rationale was in part based on the heightened state interest of keeping the information involving alleged minor victim-witnesses confidential, a concern not wholly inapplicable to this case. *See Ritchie*, 480 U.S. at 60-61.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 8

Dkt. No. 56 at 6.)  Defense offers no concrete evidence to the contrary.  Given the governing law on possession, explained in Section IIA, *supra,* the fact that the Government avers it does not possess these materials, as they do not exist, and the deference with which courts are instructed to treat Government averments of non-possession,[7] the Court denies this request.

2.  *"Copies of all criminal histories of all alleged victims and witnesses, including but not limited to arrest records that did not result in filed or prosecuted charges, charges that were diverted, suspended, or otherwise disposed of in a matter other than guilty plea and sentence, and any and all arrests and charges in this or any other federal, state or local jurisdiction."*

Copies of the full criminal histories of all alleged victims is sought to "provide essential cross-examination material" to the Defense.  (Defense Motion to Compel, Dkt. No. 48 at 9.) However, the Defense admits that the Government has already "provided . . . the criminal histories of JF1, JF2, and FVI."  (*Id.* at 5.)  Thus, in this item, Defense is seeking the "arrest records that did not result in filed or prosecuted charges, charges that were diverted, suspended, or otherwise disposed of in a manner other than a guilty plea or sentence, and any and all arrests and charges in this or any other federal, state, or local jurisdiction."  (*Id.*)

The Government does not dispute that it is in possession of or has access to these records. Instead, the Government takes issue with the materiality of these records because, they maintain, under the Federal Rules of Evidence, such non-conviction evidence would be inadmissible for the Defense's attested purpose of impeachment.  (Government's Response to Defendant's Motion to Compel, Dkt. No. 56 at 7.)

The Government is correct in stating that Rule 609 only allows for the introduction of

---

[7] *See Ritchie,* 480 U.S at 59-60; *see also* cases cited *supra* note 5.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 9

criminal history of the sort that the Government has already released to Defendant, (i.e., criminal history which resulted in a criminal conviction), and in stating that under Rule 608, extrinsic evidence is not admissible to prove specific instances of misconduct.  However, Rule 608 expressly provides that "the court may, on cross-examination, allow [non-conviction specific instances of conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness."  Fed. R. Evid. 608.  As explained in Section IIA, *supra,* "material" information, for *Brady* purposes, includes, *inter alia*, information that will "*assist*[] impeachment."  *See Lloyd*, 992 F.2d at 351.  It is true that an arrest record might well constitute inadmissible extrinsic evidence of specific instances of untruthfulness, but the Court is not now ruling on the admissibility of any evidence.  And, it is cognizable that such arrest records may alert Defendant to a specific act of dishonesty by the alleged victim-witnesses, which *may* be admissible in the form of a cross-examination question, without the support of extrinsic evidence.  Thus, this information does promise some assistance to the Defense in terms of impeachment preparation, establishing its materiality.  Therefore, the Court grants Defendant's motion for this additional criminal history information, but only to the extent that the Government actually possesses or has access to such information, in accordance with the *Bryan* standard discussed in Section IIA, *supra*.  The Prosecution is under no obligation to subpoena this information on behalf of the Defense if it is not in the Government's possession.[8]

> 3.  *"Copies of any and all CPS investigations of alleged juvenile victims and/or witnesses, whether resulting in founded or unfounded allegations, and whether or not ongoing at this time.*"

---

[8] *See* cases cited *supra* note 3.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 10

1    The Defense believes there are likely to be Child Protective Services records of the

2  alleged victim-witnesses, for one, because JV1's mother had reported her as a runaway.  (Defense

3  Motion to Compel, Dkt. No. 48 at 8.)  The Government responds that it does not have these

4  materials "in its possession and does not intend to obtain any such records."  (Defense Motion to

5  Compel, Dkt. No. 48 at 5.)

6    Leaving aside questions of materiality and privilege, Child Protective Services is not a

7  "federal agency participating in the same investigation of the defendant," *Bryan*, 868 F.2d at

8  1036, and the records CPS *alone* possesses cannot be construed as being in the possession of the

9  Government.  Further, the Court finds *Ritchie,* in which the U.S. Supreme Court upheld the denial

10  of that defendant's *Brady* request for Pennsylvania Child and Youth Services records, particularly

11  on point and precedential.[9]  Given this governing law, the fact that the Government avers it does

12  not possess nor seeks to possess these materials, and the deference with which courts are

13  instructed to treat Government averments of non-possession,[10] the Court denies Defendant's

14  request as to the CPS records of which the Government is not, as they state, in possession.

15

16    4.  *"Copies of all school records of alleged juvenile victims and/or witnesses,*
        *including but not limited to disciplinary records, whether resulting in disciplinary*
17       *action or not."*

18

19

20 _____

21 [9] As the *Ritchie* Court stated, "[t]o allow full disclosure to defense counsel in this type of case would sacrifice
   unnecessarily the Commonwealth's compelling interest in protecting its child-abuse information.  If the CYS
22 [Pennsylvania's Child and Youth Service] records were made available to defendants, even through counsel, it could
   have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse.  Child abuse is one of the most
23 difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. . .
   Recognizing this, the Commonwealth—like all other States—has made a commendable effort to assure victims and
24 witnesses that they may speak to the CYS counselors without fear of general disclosure. The Commonwealth's
   purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged
25 with criminal child abuse . . . Neither precedent nor common sense requires such a result."  *Ritchie*, 480 U.S. at 60-
   61.
26 [10] *See Ritchie,* 480 U.S at 59-60; *see also* cases cited *supra* note 5.
   ORDER DENYING IN PART AND GRANTING IN
   PART DEFENDANT'S MOTION TO COMPEL
   PRODUCTION OF BRADY MATERIALS AND
   DENYING DEFENDANT'S MOTION TO
   SUPPRESS EVIDENCE
   PAGE - 11

The Defense does not articulate with specificity what it hopes to glean from these school records, but the Court presumes such information is sought for impeachment purposes.  The Government has already provided the Defense with "two reports from the Kent School district regarding the interview with JV2 concerning JV1." (Defense Motion to Compel, Dkt. No. 48 at 5.)  The Government states that it does not have any records beyond these two reports "in its possession and does not intend to obtain any such records."  (Defense Motion to Compel, Dkt. No. 48 at 5.)

Again leaving aside questions of materiality and privilege, this Court presumes that the schools that the alleged victim-witness have attended are not run by "federal agencies participating in the same investigation of the defendant," *Bryan*, 868 F.2d at 1036.  Thus, the Prosecution cannot be said to possess or have access to these materials.[11]

Given this governing law, the fact that the Government avers it does not possess and does not seek to possess these additional school records, and the deference with which courts are instructed to treat Government averments of non-possession,[12] the Court denies Defendant's request as to the school records of which the Government is not, as they state, in possession.

> 5. *"Copies of all mental health records of alleged victims and/or witnesses, whether in this state of any other and whether or not ongoing*."

The Defense does not articulate with specificity what it hopes to glean from these mental health records, but the Court presumes such information is sought for impeachment purposes. The Defense not unreasonably assumes that mental health records exist for the alleged victim-

---

[11] And, the Government is under no obligation to try to obtain these records on Defendant's behalf.  *See* cases cited *supra* note 3.

[12] *See Ritchie*, 480 U.S at 59-60; *see also* cases cited *supra* note 5.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 12

1   witnesses, as one of the two youths has allegedly already been the victim of another, apparently

2   unrelated, sexual assault.  (Defense Motion to Compel, Dkt. No. 48 at 8.)  The Government

3   responds that it does not have these mental health records "in its possession and does not intend to

4   obtain any such records."  (Defense Motion to Compel, Dkt. No. 48 at 5.)

5          Again leaving aside questions of materiality and privilege, this Court presumes that the

6   mental health institutions that may or may not have records of the alleged victim-witnesses or of

7   FV1 are not run by "federal agencies participating in the same investigation of the defendant,"

8   *Bryan*, 868 F.2d at 1036.  The Prosecution cannot be said to possess or have access to these

9   materials, to the extent that this presumption is true.

10

11         Given this governing law, the fact that the Government avers it does not possess and does

12  not seek to possess these mental health records, and the deference with which courts are

13  instructed to treat Government averments of non-possession,[13] the Court denies Defendant's

14  request as to the mental health records of which the Government is not, as they state, in

15  possession.

16         6.   *"Copies of all records of visits to school medical faculties whether to doctor or
                nurse, and any and all referrals to outside medical facilities."*

17

18         The Defense does not articulate with specificity what it hopes to glean from these

19  medical records, but the Court presumes such information is sought for impeachment purposes.

20  The Defense not unreasonably assumes that medical records exist for the alleged victim-

21  witnesses, as one of the two youths has allegedly already been the victim of another, unrelated

22  sexual assault and FV1 has "convictions for drugs."  (Defense Motion to Compel, Dkt. No. 48 at

23

24

25

26  ────────────────────────────

[13] *See Ritchie,* 480 U.S at 59-60; *see also* cases cited *supra* note 5.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 13

8, 9.)  The Government responds that it does not have these mental health records "in its possession and does not intend to obtain any such records."  (Defense Motion to Compel, Dkt. No. 48 at 5.)

Again leaving aside questions of materiality and privilege, this Court presumes that the school and outside medical facilities that may or may not have medical records of the alleged victim-witnesses or of FV1 are not run by "federal agencies participating in the same investigation of the defendant," *Bryan*, 868 F.2d at 1036.   Thus, the Prosecution cannot be said to possess or have access to these materials, to the extent that this presumption is true.

Given this governing law, the fact that the Government avers it does not possess and does not seek to possess these medical records, and the deference with which courts are instructed to treat Government averments of non-possession,[14]  the Court denies Defendant's request as to the medical records of which the Government is not, as they state, in possession.

7.  *"Request to Compel Victim Interviews"*

In its introduction to the Motion to Compel, Defendant asks this Court to order the Government to "make" JV1, JV2, and FV1 "available for defense interviews."  (Defendant's Motion to Compel, Dkt. No. 48 at 1.)  The Court found in Defendant's Motion no explanation of the legal justification for this, nor claims that the alleged victims themselves are *Brady* "materials."  Further, this request was not included in Defendant's list of six enumerated and specific *Brady* requests included in the Memorandum accompanying the Motion.  (Defendant's Motion to Compel, Dkt. No. 48 at 4-5.)  Neither is this request reiterated or explained anywhere in the Memorandum.  But regardless of Defense's justification for such a request, there is strong

---

[14] *See Ritchie,* 480 U.S at 59-60; *see also* cases cited *supra* note 5.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 14

1   U.S. Supreme Court and Ninth Circuit precedent that a witness has an absolute right to deny

2   either party a pretrial interview.[15]   As the two witnesses do not wish to speak to Defense

3   (Government's Response to Defendant's Motion to Compel, Dkt. No. 56 at 4), this request is

4   denied.

---

[15] *See Byrnes v. United States*, 327 F.2d 825, 832-33 (9th Cir. 1964) ("It is true that any defendant has the right to attempt to interview any witnesses he desires.  It is also true that any witness has the right to refuse to be interviewed, if he so desires."); *see also United States v. Black,* 767 F.2d 1334, 1338 (9th Cir. 1985) ("The defendant's right of access is not violated when a witness chooses voluntarily not to be interviewed."); *United States v. Rich*, 580 F.2d 929, 933 (9th Cir. 1978); *United States v. Mirenda*, 443 F.2d 1351, 1355-56 (9th Cir. 1971).

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 15

## III.   DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

### A. Alleged Unlawful Search

Defendant alleges that the police conducted an unlawful, warrantless search of his vehicle, and argues that all evidence produced during this alleged unlawful search as well as all evidence produced during the allegedly-subsequent warranted search should be suppressed pursuant to the exclusionary rule and the fruit of the poisonous tree doctrine.

#### 1.   Standard for Establishing Evidentiary Taint

Defendants wishing to suppress evidence have the initial burden, first of proving with "specific evidence"[16] that an unlawful search occurred, and second, that the evidence they wish to suppress under the exclusionary rule or fruit of the poisonous tree doctrine is the product of the unlawful search or seizure.[17]   As part of this second showing, the defendant must at least "establish[] a factual nexus between the illegality and the challenged evidence."  *United States v. Kandik*, 633 F.2d 1334, 1335 (9th Cir. 1980).  After this point, the burden "shifts to the government to show that it acquired its evidence from an independent source."[18]  *Cella*, 568 F.2d at 1284-85.  *See also United States v. Polizzi*, 500 F.2d 856, 910 (9th Cir. 1974).

---

[16]*United States v. Cella*, 568 F.2d 1266, 1284-85 (9th Cir. 1977).

[17] *Nardone v. United States*, 308 U.S. 338, 341 (1939) ("The burden [in reference to that defendant's motion to suppress] is, of course, on the accused in the first instance *to prove to the trial court's satisfaction that wire-tapping was unlawfully employed*.  Once that is established – as was plainly done here – the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin.") (emphasis added).  *See also Alderman v. United States*, 394 U.S. 165, 183 (1969); *Cella*, 568 F.2d at 1284-85.

[18] The Court does not address the issues of independent source or inevitability (nor of other exceptions to the warrant requirement) both because these issues were not briefed by the parties, and because it does not find evidence sufficient to show that an illegal search took place.  But if the Defense had been able to show that an illegal search was perpetrated, the inevitability and independent source doctrines might have prevented suppression regardless.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 16

1

2          2.   **Defendant's Specific Allegations**

3          Defendant alleges that one warrantless automobile search occurred prior to the King

4   County Superior Court Judge's issuance of the search warrant for Defendant's Cadillac.

5   Specifically, Bonds claims that while "he was sitting in the booking area" he "observed the

6   police opening the door to [his] car and going thru everything inside of it shortly after he was

7   brought to the station for booking" and his car had been towed there.  (Defendant's Motion to

8   Suppress, Dkt. No. 49 at 3-4.)  The only support Defendant proffers for this alleged first,

9   warrantless search is a) his unsworn statement to counsel that this occurred[19] and b) the argument

10  that some of the information contained in the affidavit Detective Lewis presented to the King

11  County Superior Court prior to the warranted search could have only been known to the

12  Detective if the Cadillac had already been searched, without a warrant.

13          Defense's latter argument proceeds as follows.  The eighteen-page affidavit that

14  Detective Lewis presented to the King County Superior Court included the statement from

15  Deputy Phillips that he had seen three cell phones in Defendant's Cadillac when he made contact

16  with the Defendant in the restaurant parking lot.  (Affidavit for a Search Warrant, Dkt. No. 53,

17  Ex. 9 at 8.)  The pictures taken during the June 6th execution of the search warrant show two cell

18  phones in positions in the car in which they would be readily and immediately visible to anyone

19  approaching the car and looking in through the window.  (Dkt. 49, Ex. B.)  The third phone was

20

21

22

23  _____

24  [19] There is no indication that Defendant ever complained about this alleged unlawful search before this allegation
    appears in Defense's Motion to Suppress.  In his Declaration, Detective Lewis avers that he interviewed the
25  Defendant at the South Precinct, directly after the alleged unlawful search took place, and Defendant did not
    mention nor ask him about this alleged warrantless search.  (Declaration of Brian Lewis, Dkt. No. 53, Ex. 8 at para.
26  3.)

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 17

found, during the execution of the search warrant, in the driver door pocket.  (Dkt. No. 49, Ex. C; Dkt. No. 53, Ex 5.)  Defense claims this phone would have been out of sight to anyone who had not searched the car – "there is no way Deputy Phillips could have seen the third cell phone unless he opened the car door and removed it from its hiding place."  (Defendant's Motion to Suppress, Dkt. No. 49 at 3-4.)  Thus, Defense claims that the police must have performed an illegal search of Defendant's car, a search that he claims to have witnessed first-hand while sitting in the booking area (after he had been driven to the South Precinct by Deputy Phillips and his car had been towed there).  (Defendant's Motion to Suppress, Dkt. No. 49 at 3-4.)  Defense then implies that the police used the information that there was a third phone in the door pocket[20] to obtain the search warrant.  In short, Defense's argument is that the affidavit sworn to obtain the search warrant included statements that could have only been made if a search had already occurred, thus, an unwarranted search occurred.

This foregoing argument is Defendant's only substantiation of the alleged warrantless search of his car.  And this alleged warrantless search is Defense's ground for claiming the need to suppress all subsequently found evidence under the exclusionary rule and the fruit of the poisonous tree doctrine.

　　　　3.  **Defense's Failure to Meet the Initial Suppression Burden**

---

[20] The mention of there being three phones in the car comprises a single sentence in an eighteen-page affidavit that includes evidence such as text message conversations between Defendant and JV1 that JV1's mother had sent the police, JV2's descriptions and photo identification of Defendant to the police, JV2's interview with the police, descriptions of the police's interviews with staff at motels to which Defendant took JV1 and JV2, and surveillance videos of Defendant and JV1 and JV2, among other evidence.  (Affidavit for a Search Warrant, Dkt. No. 53, Ex. 9.) Defense nowhere contends that the King County Judge would not have found probable cause had this affidavit only mentioned two phones rather than three.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 18

However, Defense fails to meet the initial burden explained in Section III(A)(1), *supra*. Defense's aforementioned argument is insufficient to satisfy the *Nardone/Cella/Kandick* requirements of proving an illegal search with "specific evidence," and of showing that the evidence in question (which, implies Defense, is nearly all the evidence in this case), shares a "factual nexus" with the alleged but unproven warrantless search on June 5th 2013.

It is temporally and factually impossible for Defense's argument to substantiate Defendant's claim that the Cadillac was illegally searched at the police station while he watched from the booking area (the only claim of a warrantless search made by Defendant). The key problem with Defense's argument, as the Government points out, is that Deputy Ryan Phillips avers that he called Detective Brian Lewis to report his observation of *three* cell phones *before the Cadillac was even transported to the South Precinct station* (Declaration of Ryan Phillips, Dkt. 52, Ex. 7 at paras. 7-11), the only place Defendant claims the alleged warrantless search took place. As Deputy Phillips states in his sworn Declaration, after the situation with Defendant escalated, a backup law enforcement officer arrived at the restaurant and detained Defendant. Still in the parking lot of the Everett restaurant, with both Defendant and the car still present, Deputy Phillips

> [C]alled Kent Police Department Detective Brian Lewis to let him know
> that I had contacted the suspects listed in his bulletin. . . . Detective Lewis
> asked [Deputy Phillips] whether [he] had seen anything in the car while
> contacting the driver and passenger. I told him about seeing phones in the
> car along with the white phone in the lower pocket of the driver's door. It
> was clearly visible from the passenger side of the car while I was in
> contact with the driver and the passenger. This white phone is reflected in
> the Exhibits 4-6. I did not go in the car or search it at any time. I placed
> Nathan Bonds, in my vehicle, for transport to Snohomish County South
> Precinct. After calling dispatch, a tow operator with Mary's Tow arrived.
> I remained on the scene while the tow operator connected the car to the
> tow truck. I do not recall the tow operator conducting a search of the car

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 19

> or otherwise even entering the interior of the car. . . I then transported Bonds and followed the tow driver and Bond's car to the Snohomish County South Precinct [where Defendant alleges the warrantless search took place]. I watched the tow driver park the car in the parking bay. After doing do, as is our practice and policy, I placed evidence tape over the doors, hood and trunk and wrote my initials. . . Again, at no time did I enter the vehicle or otherwise search it. To my knowledge, the car remained intact and sealed until Detective Brian Lewis executed the search warrant.

(Declaration of Ryan Phillips, Dkt. 52, Ex. 7 at paras. 7-11.) It cannot be true that Deputy Ryan Phillips reported evidence gleaned from a warrantless search at the South Precinct to Detective Lewis for Detective Lewis' use in an affidavit, when Deputy Phillips reported such evidence before either Deputy Phillips, Defendant, or Defendant's car had even departed the restaurant parking lot for the South Precinct.

Moreover, Defense has not shown "with specific evidence" that the third phone in the driver's side pocket could not be seen from Detective Phillip's position outside the Cadillac sedan's passenger side, at the restaurant lot. First, while the third phone was in the driver's door pocket when the car was searched on June 6th, this does not necessitate the conclusion that the phone was in the driver's door pocket continuously from the moment that Deputy Phillips approached the car. Deputy Phillips spoke with Defendant and FV1 for several moments before the situation became tense and Deputy Phillips decided that safety concerns necessitated him to draw his gun and to call for backup. (Deputy Phillips Declaration, Dkt. 52, Ex. 7 at para. 4.) Before the situation had escalated, Defendant and FV1 were eating the food they had just bought at the restaurant. (*Id.*) It is possible that Deputy Phillips saw the third phone, and then Defendant placed it in the door pocket, before the situation became tense and Deputy Phillips became more attuned to Defendant's movements.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 20

Second, even if the third phone was in the driver's door pocket when Deputy Phillips approached the car and remained in there until the car was lawfully searched on June 6th, Defense has in no way shown that the phone was "completely out of sight" to Deputy Phillips when he was standing outside the passenger side of the Cadillac, looking into the sedan through the rolled-down passenger side window.  Defense emphasizes Pictures 59 and 60 of the photographs taken during the June 6th execution of the warrant.  (Dkt. No. 49, Ex. C.)  However, reference to other photographs show the Cadillac, a 2005 deVille, to be a low-slung, four-door sedan. (Dkt. No. 52, Exs. 1, 4.)  Although the issue is not presently before the Court, it does not seem at all impossible that Deputy Phillips, as he claims,[21] saw the phone in the pocket from outside the car, on the opposite side, depending on the position of the phone in the pocket, the size of the phone (an HTC), Defendant's size, Defendant's position in the seat, the position of the driver's seat, and Deputy Phillips' height.  The photographic evidence with which the Government presents the Court supports this.  (*See* Government's Response to Defendant's Motion to Suppress, Dkt. No. 52, Exs. 1, 4, 5.)

Given these temporal impossibility problems and factual insufficiencies, the Court cannot conclude that Defense has met its burden of "establishing a factual nexus between the alleged illegality and the challenged evidence," much less its threshold burden of proving with "specific evidence" that an unlawful search occurred.  Thus, the Court denies Defendant's Motion to Suppress.

**B.      Request for Evidentiary Hearing**

---

[21] (Declaration of Ryan Phillips, Dkt. 52, Ex. 7 at paras. 7-11.)

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 21

An evidentiary hearing to demonstrate the "factual nexus" between an unlawful search and evidence the defendant seeks to suppress is, at best, premature when defendant has yet to show that an unlawful search occurred.  Nor is an evidentiary hearing required even if it has been determined that an unlawful search has occurred – "*Alderman* does not automatically require a hearing to determine the existence or absence of taint." *Kandik*, 633 F.2d at 1335 (upholding the district court's denial of an evidentiary hearing to show taint when the fact that an unlawful search had taken place was undisputed and the connection between the evidence and the unlawful search was obvious).  Given the lack of substantiation for the alleged unlawful search of the Cadillac, this Court does not find an evidentiary hearing on the topic necessary.

Further, Defense is not entitled to an evidentiary hearing on the grounds that they allege that Detective Lewis provided false information in his affidavit to the King County Superior Court Judge who issued the warrant.  (This false information, Defense claims, was Deputy Phillip's statement to Detective Lewis that he had seen three phones in the car at the restaurant.) A defendant is entitled to an evidentiary hearing only if "he makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). A "detailed offer of proof" of the false statements must be proffered by the defendant. *United States v. Kiser,* 716 F.2d 1268, 1271 (9th Cir. 1983).  Defense fails to meet this standard.

First, for the reasons articulated in Section III(A)(3), *supra,* Defense has not made a substantial preliminary showing that Deputy Phillips' statement that he could see the phone in the door pocket was false, making Detective Lewis' report of such statement false as well.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO COMPEL PRODUCTION OF BRADY MATERIALS AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
PAGE - 22

Second, even if Defense had shown that Deputy Phillips could not possibly have seen the third phone from his vantage point, and that the phone was in the door pocket from the very beginning of Defendant's encounter with Deputy Phillips, Defense has offered no evidence that such an alleged false affidavit statement was made knowingly and intentionally, or with reckless disregard for the truth.  Detective Lewis, not Deputy Phillips, was the affiant and there is nothing to suggest, *even if* Deputy Phillips' statement about seeing three phones was false, that Detective Lewis, who was not on the scene, would have either known this or been reckless in believing his fellow officer.

Third, and most importantly, Defense does not allege, nor does the Court see how it could, that whether there were three phones or two phones initially sighted in the car would have made any difference in the King County Superior Court Judge's decision to grant a warrant.  It seems much more likely that the Judge based her decision to grant the warrant/found probable cause based on evidence put forth in the affidavit including, but not limited to, the text message conversations between Defendant and JV1 that JV1's mother had sent the police, JV2's descriptions and photo identification of Defendant to the police, a report of JV2's interview with the police, reports of police interviews with staff at motels to which Defendant took JV1 and JV2, and descriptions of surveillance videos of Defendant and JV1 and JV2 around Oregon and Washington, rather than on the statement that there were three phones in Defendant's car when Deputy Phillips made contact.  (Affidavit for a Search Warrant, Dkt. No. 53, Ex. 9.)

Thus the Court finds that an evidentiary hearing is neither mandated nor would it be useful, and denies Defendant's request.

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 23

**IV.    CONCLUSION**

For the foregoing reasons, the Court DENIES all but Defendant's second request in Defendant's Motion to Compel (Dkt. No. 48), GRANTS IN PART Defendant's second *Brady* request for the complete criminal histories of the witnesses that are in the possession of the Prosecution, DENIES Defendant's Motion to Suppress (Dkt. No. 49), and DENIES Defendant's request for an evidentiary hearing on the Motion to Suppress.

DATED this 26th day of September 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF BRADY MATERIALS AND
DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE
PAGE - 24